Smith v. Smith.

---

## Cyrus Smith *versus* Wendell P. Smith.

When a valid mortgage of personal property is made and duly recorded, an officer is not authorized either by Rev. Stat. c. 117, or by the act of amendment of 1842, c. 31, to make an attachment of the same *on mesne process*, as the property of the mortgagor, without first paying or tendering the full amount of the debt due, secured by the mortgage.

If a mortgage of personal property is duly recorded, it becomes effectual, being otherwise valid, without a formal delivery of the property, whether it be the first, or a second mortgage of the same property.

There may be a second mortgage of personal property, under our statutes, which shall be valid against all but the first mortgagee and his assigns.

It is not necessary, that the payment or discharge of a first mortgage of personal property should be recorded, in order that a second one should hold the property against an attaching officer.

Where an officer returns upon a writ an attachment of personal property, and sets up such attachment in defence, on the trial of an action of replevin against him for the same property, it is to be presumed that he did whatever was necessary to constitute and preserve his attachment; and in the absence of any opposing proof, this will be sufficient evidence, that the property had been in his possession.

Replevin for certain articles of household furniture. The

case came before the Court on exceptions to the ruling of the Judge at the trial ; and on a motion to set aside the verdict as against evidence. The evidence is set forth in the exceptions ; and thereupon, as the exceptions state, the defendant contended and requested the Court to instruct the jury, that at the time of making said attachment by the defendant, said Sawyer had an attachable interest in said property replevied ; and at the time of making and recording said mortgage from said Sawyer to the plaintiff, the mortgage to Ilsley being in existence, the said mortgage to the plaintiff was inoperative and void, and could not be valid by the subsequent payment to Ilsley ; and that for either of these causes the action could not be maintained. WHITMAN C. J. presiding at the trial, declined to give such instructions, and instructed the jury, that if they believed the testimony of Sawyer, the mortgagor, the money was actually loaned by the plaintiff ; but even if this were so, if Sawyer intended to defeat or delay his creditors, and the plaintiff knew, or had reason to believe, that such was Sawyer's design, the mortgage was fraudulent and the action could not be maintained ; but if the whole transaction was *bona fide* on the part of the plaintiff, and he had no reason to believe that Sawyer intended to defeat or delay his creditors, then the action was maintainable.

To which instructions and refusal to instruct, and to the rulings of the Court in matters of law, the defendant excepted ; a verdict having been returned for the plaintiff.

No copy of the mortgage is found among the papers. The material facts appearing in the evidence are stated in the opinion of the Court.

*Wells & Sweat* argued for the defendant. The grounds taken appear in the requests for instruction and in this opinion of the Court. They cited 3 Pick. 255 ; 13 Maine R. 236 ; 15 Maine R. 48 ; Rev. St. c. 117, § 40 ; 7 T. R. 9 ; 10 Pick. 166 ; 4 Kent, 138 ; 18 Maine R. 127 ; 22 Maine R. 234 ; 19 Maine R. 49 ; 3 Metc. 268 ; 4 Hill, 271.

*W. P. Fessenden* and *Munger,* for the plaintiff.

The opinion of the Court was drawn up by

TENNEY J. — The property in controversy was the household furniture of George Sawyer, who gave a mortgage of the same to Rufus Read, on June 30, 1842, to secure various debts, to run eight months. On January 30, 1843, Joseph Ilsley received this mortgage of Read, who discharged it the next day. Sawyer gave a mortgage of the same property to Ilsley for the security of a loan of $300, payable in six months. On August 10, 1843, Sawyer borrowed of the plaintiff the sum of four hundred dollars on a credit of nine months, three hundred of which was received by Ilsley in payment of the debt secured by the mortgage to him ; and for the security of the plaintiff's loan, Sawyer gave a mortgage to him of the same property, and dated August 10, 1843, which was recorded Nov. 20, 1843. By an arrangement between Ilsley and those with whom the money to discharge his mortgage was deposited, he did not actually receive it till Dec. 12, 1843, when he assigned his mortgage to the plaintiff. On the 14th of May, 1844, the last mortgage being undischarged, the defendant attached the property, being in the house occupied by Sawyer, and which he continued to occupy till the December following, upon a writ made upon a *bona fide* debt against Sawyer in favor of Stephen Hall & al. which property was replevied by the plaintiff on the same day. A question, whether the transaction between the plaintiff and Sawyer was fraudulent as against creditors was submitted to the jury, and the Judge instructed them, that unless they were satisfied of the fraud, the action was maintainable. The jury found a verdict for the plaintiff. The counsel for the defendant contend, that the instruction of the Judge was erroneous. First. Because the defendant was legally justified in making the attachment. Second. That the mortgage to Ilsley being in existence when the one to the plaintiff was executed, the latter was inoperative and void, and did not become valid by the subsequent discharge of the former ; but if otherwise, a delivery of the property was necessary that it should vest in the plaintiff, of which there was no evidence. Third. That the mortgage

upon its face was fraudulent. And fourth. That from the case, the property was never taken from the possession of the plaintiff; and no demand was made upon the defendant before the commencement of the action.

1. By Rev. Stat. c. 125, § 30, the mortgagor of personal property has sixty days after breach of the condition within which to redeem it; when the defendant made the attachment the plaintiff's right was defeasible. But if the property vested in the plaintiff as mortgagee, it was not in the power of the defendant to make an attachment without first paying or tendering to the plaintiff, the full amount of the debt secured. Ch. 117, § 38, Rev. Stat. The 40th section of the same chapter, as amended in 1842, by statute entitled "An Additional act to amend the Revised Statutes," c. 31, § 12, confines the right of a creditor to make an attachment, to a seizure and sale upon *execution*. *Pickard* v. *Low*, 15 Maine R. 48. *Paul* v. *Hayford & al.* 22 Maine R. 234.

2. If a mortgage of personal property is recorded, it becomes effectual, being otherwise valid, without a formal delivery of the property. *Bullock* v. *Williams*, 16 Pick. 33. *Goodenow* v. *Dunn*, 21 Maine R. 86. It is not perceived, that a delivery of the same property mortgaged subsequently, while the former mortgage exists, becomes more necessary. The existence of the mortgage to Ilsley could not prevent that to the plaintiff, from having effect, after the first should be discharged; and while the right of redemption of Ilsley's mortgage continued, the defendant not claiming by virtue of it, there was no one, who could object to its discharge by the plaintiff; it was discharged long prior to the attachment made by the defendant, and was in fact cancelled at the time of the execution of the mortgage to the plaintiff; the latter was *bona fide*, duly recorded, and it does not lie with the defendant to say, that before the origin of his claim, it was subject to another, and thereby void.

3. Neither is the mortgage to the plaintiff fraudulent upon its face. It was upon a legal and sufficient consideration, and was properly recorded, in order to give it full effect. The

mortgage to Ilsley is not denied to be valid and legally recorded. The creditors of Sawyer had all the notice arising from both to which they were entitled. The cancellation, partial or entire payment of mortgages, is not required to be recorded. The defendant and the creditor, who directed the attachment, had constructive notice at least of the claims of Ilsley and the plaintiff, and could have easily ascertained their true condition.

4. The case finds, that the defendant attached the property as a deputy sheriff upon mesne process. It is to be presumed, that he did whatever was necessary to constitute a valid attachment; he must have taken possession of it, and have retained that possession, in order to preserve the claim, which he set up at the trial as his defence. There is nothing in the exceptions showing, that possession was not taken by him, or that the possession was in the plaintiff at the time he instituted this suit. A demand upon the defendant before the commencement of the action was unnecessary. His interference with the property was unauthorized, and his liability was fixed immediately. The case cited from 3 Metc. 268, is inapplicable to the one before us; that was presented under a statute different entirely from any in this State. *Cutter* v. *Copeland*, 18 Maine R. 127.

The question of fraud was submitted to the jury upon evidence adduced by both parties, under proper instructions from the Court; and it would be interfering too much with the rights of jurors to say that the verdict could not stand.

*Exceptions and motion overruled.*